# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 12, 2018      Decided November 19, 2019

No. 18-5218

PLANNED PARENTHOOD OF WISCONSIN, INC., ET AL.,
APPELLANTS

v.

ALEX MICHAEL AZAR, II, IN HIS OFFICIAL CAPACITY AS
UNITED STATES SECRETARY OF HEALTH AND HUMAN
SERVICES AND DIANE FOLEY, IN HER OFFICIAL CAPACITY AS
DEPUTY ASSISTANT SECRETARY FOR THE OFFICE OF
POPULATION AFFAIRS,
APPELLEES

Consolidated with 18-5219

Appeals from the United States District Court
for the District of Columbia
(No. 1:18-cv-01035)
(No. 1:18-cv-01036)

*Paul R.Q. Wolfson* argued the cause for appellants. With him on the briefs were *Kimberly A. Parker*, *Ari J. Savitzky*, *Leon T. Kenworthy*, *Ruth E. Harlow*, *Jennifer Dalven*, *Elizabeth Watson*, *Alan E. Schoenfeld*, *Helene T. Krasnoff*, *Carrie Y. Flaxman*, and *Arthur B. Spitzer*.

2

*Xavier Becerra*, Attorney General, Office of the Attorney General for the State of California, *Julie Weng-Gutierrez*, Senior Assistant Attorney General, *Karli Eisenberg*, Deputy Attorney General, *Brian E. Frosh*, Attorney General, Office of the Attorney General for the State of Maryland, *Maura Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Lori Swanson*, Attorney General, Office of the Attorney General for the State of Minnesota, *Gubir S. Grewal*, Attorney General, Office of the Attorney General for the State of New Jersey, *Hector Balderas*, Attorney General, Office of the Attorney General for the State of New Mexico, *Barbara D. Underwood*, Attorney General, Office of the Attorney General for the State of New York, *Joshua H. Stein*, Attorney General, Office of the Attorney General for the State of North Carolina, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Josh Shapiro*, Attorney General, Office of the Attorney General for the Commonwealth of Pennsylvania, *George Jepson*, Attorney General, Office of the Attorney General for the State of Connecticut, *Matthew P. Denn*, Attorney General, Office of the Attorney General for the State of Delaware, *Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, *Russell A. Suzuki*, Attorney General, Office of the Attorney General for the State of Hawaii, *Lisa Madigan*, Attorney General, Office of the Attorney General for the State of Illinois, *Thomas J. Miller*, Attorney General, Office of the Attorney General for the State of Iowa, *Janet T. Mills*, Attorney General, Office of the Attorney General for the State of Maine, *Mark R. Herring*, Attorney General, Office of the Attorney General for the Commonwealth of Virginia, *Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, *Peter F. Kilmartin*, Attorney General, Office of the Attorney General for the State of Rhode Island, and *Thomas J. Donovan*, *Jr.*, Attorney General, Office of the Attorney

3

General for the State of Vermont, were on the briefs for *amici curiae* States of California, et al. in support of appellants.

*Sasha Samberg-Champion*, *Lara N. Baker-Morrish*, and *Edward N. Siskel* were on the brief for *amici curiae* The Cities of Columbus, Ohio, et al. in support of plaintiffs.

*Jaynie R. Lilley*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Matthew M. Collette*, Attorney.

*Brad D. Schimel*, Attorney General at the time the brief was filed, Office of the Attorney General for the State of Wisconsin, and *Misha Tseytlin*, Solicitor General at the time the brief was filed, were on the brief for *amicus curiae* State of Wisconsin in support of the United States' Response to this Court's August 8 Order. *Joshua L. Kaul*, Attorney General, and *Luke N. Berg* and *Steven C. Kilpatrick*, Assistant Attorneys General, entered appearances.

Before: SRINIVASAN and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

Dissenting opinion filed by *Circuit Judge* SRINIVASAN.

KATSAS, *Circuit Judge*: In 2018, the Department of Health and Human Services issued a Funding Opportunity Announcement (FOA) soliciting applications for family-planning grants. The district court rejected claims that the FOA was inconsistent with a governing regulation and the Administrative Procedure Act. While this appeal was pending, HHS disbursed the grant funds for 2018, issued a

4

modified FOA for 2019, and amended the regulation. We hold that these events mooted the appeal.

I

Title X of the Public Health Service Act authorizes the Secretary of Health and Human Services to award grants for voluntary family-planning projects. 42 U.S.C. § 300(a). The statute provides that the Secretary, in making these grants, "shall take into account the number of patients to be served, the extent to which family planning services are needed locally, the relative need of the applicant, and its capacity to make rapid and effective use of such assistance." *Id.* § 300(b). In 2000, HHS promulgated an implementing regulation stating that the Secretary "may award grants … taking into account" seven considerations. 42 C.F.R. § 59.7 (2018); *see Standards of Compliance for Abortion-Related Services in Family Planning Services Projects*, 65 Fed. Reg. 41,270, 41,280 (July 3, 2000). The first four considerations tracked the ones listed in the statute; the final three were the adequacy of an applicant's facilities and staff, the availability of other resources in the community, and the degree to which the project satisfied regulatory requirements.

HHS awards Title X grants through a competitive process. At the beginning of each grantmaking cycle, HHS issues an FOA stating "the criteria and process to be used to evaluate applications." 45 C.F.R. § 75.203(c)(5). In recent years, FOAs have set forth HHS's "program priorities" and "key issues" for the upcoming year. An advisory panel scores the applications on a 100-point scale. HHS's Deputy Assistant Secretary for Population Affairs makes final grant decisions on behalf of the Secretary.

The 2018 FOA varied from its predecessors in several respects. As relevant here, it updated the program priorities

5

and key issues. Dep't of HHS, *Announcement of Anticipated Availability of Funds for Family Planning Services Grants*, No. PA-FPH-18-001 at 9–11 (Feb. 23, 2018) (2018 FOA). It also modified the scoring process to award up to 35 of the 100 points based on the degree to which the proposed project would implement those priorities and issues. *Id.* at 43–44.

The plaintiffs are three affiliates of Planned Parenthood and the National Family Planning & Reproductive Health Association. In the district court, they argued that the seven considerations set forth in the regulation were exclusive and that any changes to the scoring criteria required notice-and-comment rulemaking. More narrowly, they argued that specific FOA provisions were inconsistent with the regulation—those that referenced abstinence, primary-care services, involvement of family members in planning decisions, partnerships with faith-based organizations, and natural family-planning methods as opposed to contraceptives.

The district court granted summary judgment for HHS. It concluded that the FOA was not final agency action, did not require notice-and-comment rulemaking, and was neither contrary to law nor arbitrary. *Planned Parenthood of Wis., Inc. v. Azar*, 316 F. Supp. 3d 291 (D.D.C. 2018).

After the plaintiffs appealed, HHS announced the Title X grants for 2018. The plaintiffs sought an interim injunction to prevent HHS from disbursing the grant money. We denied the injunction, and then HHS paid out the grants. The 2018 grantmaking cycle is now over.

After briefing concluded, HHS issued its FOA for fiscal year 2019, which significantly revises the challenged FOA provisions. *See* Dep't of HHS, *Announcement of Availability of Funds for Title X Family Planning Services Grants*, No. PA-FPH-19-001 (Nov. 7, 2018) (2019 FOA).

6

After oral argument, HHS amended 42 C.F.R. § 59.7. *Compliance with Statutory Program Integrity Requirements*, 84 Fed. Reg. 7714, 7788 (Mar. 4, 2019). As modified, the regulation now provides that "applicants will be subject to criteria for selection within the competitive grant review process, including" four restructured and expanded considerations.

II

Before reaching the merits, we must first address whether we have jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Article III of the Constitution limits our jurisdiction to "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), so we lose jurisdiction if a case becomes moot while an appeal is pending, *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (per curiam). We have held that the initial burden of proving mootness lies with the party claiming it, whereas the opposing party bears the burden of showing that an exception to mootness applies. *Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010). Nonetheless, we have an "independent obligation" to ensure that appeals before us are not moot. *Am. Freedom Def. Initiative v. WMATA*, 901 F.3d 356, 361 (D.C. Cir. 2018) (quotation omitted).

A

An appeal becomes moot if intervening events make it impossible for us to grant "effectual relief" to the prevailing party. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). That is the case here. Now that the 2018 grant funds have been disbursed, this Court "cannot reach them in order to award relief." *City of Houston v. HUD*, 24 F.3d 1421, 1426 (D.C. Cir. 1994). Recognizing as much, the plaintiffs, now as appellants, disclaim any request for

7

recoupment. Oral Arg. at 2:12 ("we are not asking the Court to recall the funds"). Nor could we provide any other form of meaningful injunctive relief; the 2018 grant process has long since concluded, and the 2018 FOA covers only that cycle. Barring use of the expired FOA thus would have no effect. Likewise, because the 2018 FOA is now inoperative, a declaration that it was unlawful would amount to nothing more than an advisory opinion. *See NRDC v. NRC*, 680 F.2d 810, 814–15 (D.C. Cir. 1982).

To avoid mootness, the plaintiffs attempt to recast their suit as challenging ongoing HHS policies. It is true that "a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). But the plaintiffs alleged no such policy in the district court, where their claims focused exclusively on the 2018 FOA. In fact, the plaintiffs first alleged an ongoing policy in the final footnote of their opening appellate brief. And only in the reply brief did they identify the policy as one of using FOAs "to change the Title X application review criteria, in violation of existing regulations and without notice-and-comment rulemaking." Appellants' Reply Br. 5. Thus, the plaintiffs twice have forfeited any challenge to ongoing policies—first, by raising no such challenges below, *see Flynn v. Commissioner*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001); and second, by fairly raising such challenges only on reply here, *see City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003) (per curiam). The plaintiffs remain free to challenge ongoing HHS policies in a separate action, but they have preserved no such challenge here.

In any event, the intervening regulation moots the challenge. After the reply brief asserted a policy "in violation of existing regulations," Appellants' Reply Br. 5, HHS

8

amended 42 C.F.R. § 59.7—the very provision that the plaintiffs say was violated.  With changed regulations now governing a changed FOA, the record provides no support for the allegation of an ongoing policy.

B

The plaintiffs further argue that this case is capable of repetition yet otherwise would evade review.  That exception to mootness applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam).  The action that must be repeatable is the "precise controversy" between the parties.  *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005) (*PETA*); *see Del Monte*, 570 F.3d at 322–24.  In other words, the capable-of-repetition exception permits adjudication of an otherwise-moot case on the theory that *it* is capable of repetition; the exception does not permit the adjudication of *one* otherwise-moot case in anticipation of a *different* live one.  If the exception swept that broadly, it would be inconsistent with "the Constitution's requirement, set forth in Article III, that courts resolve only continuing controversies between the parties."  *PETA*, 396 F.3d at 422.

Here, the legal controversy teed up by the plaintiffs is not capable of repetition.  In general terms, that controversy is whether the 2018 FOA violated the unamended version of 42 C.F.R. § 59.7.  But the 2018 FOA has been superseded by a very different 2019 FOA.  And the amended regulation substantially rewrites the very language invoked by the plaintiffs.  Under these circumstances, there is neither

9

theoretical nor practical justification for adjudicating whether the expired FOA violated the expired regulation.

The 2019 FOA differs from the 2018 FOA in at least six important respects. First, the 2019 FOA encourages abstinence counseling only for adolescents, whereas the 2018 FOA encouraged it for both adolescents and adults. *Compare* 2019 FOA at 15, *with* 2018 FOA at 11. Second, the 2019 FOA encourages applicants either to offer primary-care services or to refer patients to nearby providers, whereas the 2018 FOA arguably encouraged only the former. *Compare* 2019 FOA at 15, *with* 2018 FOA at 10. Third, the 2019 FOA encourages family participation in the planning decisions of minors only, whereas the 2018 FOA encouraged family participation in the decisions of both minors and adults. *Compare* 2019 FOA at 25, 47, *with* 2018 FOA at 10. Fourth, the 2019 FOA emphasizes "interaction with community and faith-based organizations to develop a network for client referrals," whereas the 2018 FOA encouraged such interaction with no supporting explanation. *Compare* 2019 FOA at 16, *with* 2018 FOA at 11. Fifth, the 2019 FOA contains over a dozen references to contraception, *see* 2019 FOA at 5, 8–9, 11–12, 37, whereas the 2018 FOA contained none. Sixth, the 2019 FOA allots 20 points for monitoring the quality of services "according to the priorities" and another 10 points for "effective and efficient implementation of the key issues." *See* 2019 FOA at 48–49. In contrast, the 2018 FOA allotted 10 points for adequate facilities and staff "to carry out the program requirements, as well as the priorities and key issues" in the FOA, and another 25 points for "effective and efficient implementation" of the "priorities and key issues." *See* 2018 FOA at 43–44. At oral argument, the plaintiffs acknowledged that these differences are significant: "When you look at the 2019 FOA, there is no question that what the agency has done

10

here is more moderate on the specific issues that we are concerned about." Oral Arg. at 3:39.

Moreover, the plaintiffs give us no basis to conclude that HHS is likely to use the 2018 criteria again. When "estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc). On this point, the plaintiffs' own allegations cut against them: they praise the past "stability of the Title X program" and contend that the 2018 FOA introduced "dramatic changes" to it. *See* J.A. 13 (Compl. ¶ 6). So we have no reason to think that the 2018 provisions, as opposed to the 2019 provisions or any others, are likely to be used in the future.

To elide over the many differences between the 2018 and 2019 FOAs, the plaintiffs assert as capable of repetition the broader question whether an FOA may add *any* review criteria, without notice-and-comment rulemaking, beyond the precise ones listed in section 59.7. But the unamended and amended versions of the regulation differ in ways that bear on this point as well. The unamended regulation provided that the Secretary "may award grants … taking into account" seven considerations. 42 C.F.R. § 59.7(a) (2018). In contrast, the amended regulation provides that "applicants will be subject to criteria for selection within the competitive grant review process, including" four restructured and expanded considerations. 42 C.F.R. § 59.7(c) (2019). This use of "including" strongly suggests that the four considerations enumerated in the amended regulation are not exclusive, so the agency may, in any individual grantmaking cycle, consider other factors as well. At a minimum, the amendment makes any challenge under the new regulation materially different from the plaintiffs' challenges under the old regulation. The same legal controversy is thus unlikely to recur.

11

Our dissenting colleague argues that one of the plaintiffs' challenges is capable of repetition—their "statutory" claim that the APA required notice-and-comment rulemaking for the changes made by the 2018 FOA, as distinct from their "regulatory" claim that the changes violated 42 C.F.R. § 59.7. *Post* at 1–2.  However, the argument that notice-and-comment rulemaking was required rested in significant part on the proposition that section 59.7 set forth the exclusive criteria for judging grant applications.  *See* Appellants' Br. 31–33.  As explained above, that premise was undercut when HHS amended section 59.7 to create new criteria, which it now casts as inclusive rather than exclusive.  At a minimum, the "legal questions" relevant to the notice-and-comment claim have materially changed, so that claim too is not capable of repetition.  *See PETA*, 396 F.3d at 422–23.  To be clear, we do not decide whether future FOAs, with as-yet-unknown terms, may require notice-and-comment rulemaking.  Instead, we hold only that we lack Article III jurisdiction to pre-judge that question.

C

When a pending appeal becomes moot, our general practice, following *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), is to vacate and remand with instructions to dismiss.  *See*, *e.g.*, *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) (en banc) (per curiam).  The decision to vacate reflects equity practice, so vacating is inappropriate when the appellant "caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24–25 (1994).  Here, the plaintiffs caused neither the disbursement of 2018 grant funds (which they affirmatively sought to prevent), nor the change in FOA terms after 2018, nor the regulatory amendment in 2019.  We therefore vacate

12

the district court's judgment and remand the case with instructions to dismiss this case as moot.

*So ordered.*

SRINIVASAN, *Circuit Judge*, dissenting: In this case, the plaintiffs challenge HHS's adjustments in the 2018 FOA of the criteria used to select funding recipients for voluntary family-planning projects. My colleagues conclude that the plaintiffs' challenge is moot and that the circumstances do not implicate the capable-of-repetition exception to mootness. I respectfully disagree. In my view, at least one of the plaintiffs' claims is capable of repetition yet evading review, such that the challenge should go forward.

My colleagues emphasize that HHS has recently promulgated an amended regulation setting out the considerations taken into account in awarding funding. The amended regulation, my colleagues reason, renders plaintiffs' challenge to the 2018 FOA as violating the prior regulation *in*capable of repetition: after all, insofar as the plaintiffs contend that HHS's changes to the funding criteria in the 2018 FOA are inconsistent with the prior regulation, that regulation has been superseded. As a result, my colleagues conclude, that claim cannot be considered capable of repetition.

Even if that is so, the plaintiffs also assert a separate claim, one that is unaffected by the amended regulation. That claim contends that the 2018 FOA's adjustments to the funding criteria violated the Administrative Procedure Act because the adjustments were adopted without going through notice-and-comment procedures. *See* Nat'l Family Planning & Reproductive Health Ass'n Compl. ¶¶ 16, 97, 123–125, J.A. 116, 137, 144; *accord* Planned Parenthood Compl. ¶ 121, J.A. 48. That (statutory) claim of a violation of the APA's notice-and-comment requirements is distinct from, and does not depend on, the (regulatory) claim of a violation of the prior HHS regulation. The plaintiffs thus treated the APA notice-and-comment claim as a distinct one in arguing for a preliminary injunction, and the district court correspondingly addressed the APA claim separately in its decision. *See Planned Parenthood of Wis., Inc. v. Azar*, 316 F. Supp. 3d 291,

2

304–08 (D.D.C. 2018); Mem. of Law in Support of Pls.' Mot. for Prelim. Inj. 21–24.

In assessing whether that claim is capable of repetition, we ask whether "the legal wrong complained of by the plaintiff"—adjustment of the funding criteria without notice-and-comment procedures—"is reasonably likely to recur." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009). I believe it is. In fact, the grounds for the claim have already recurred. The plaintiffs alleged that the 2018 FOA changed the funding criteria without abiding by notice-and-comment procedures. The following year, HHS again adjusted the funding criteria in the 2019 FOA, *see* Maj. Op. 9–10, again without going through notice-and-comment procedures. And the amended regulation, as my colleagues construe it, contemplates that FOAs in the future can likewise adjust the funding criteria. *See id.* at 10. The amended regulation, in short, does not stand in the way of HHS's repeating the conduct challenged by the plaintiffs as inconsistent with the APA—if anything, the regulation invites that very conduct.

For those reasons, I would conclude that the capable-of-repetition exception to mootness applies in this case. While my colleagues conclude that this case is moot, nothing in the court's decision today prevents the plaintiffs (or any other party) from reasserting an APA challenge to any adjustment to the funding criteria in a future FOA. I do agree with my colleagues in one respect: insofar as the plaintiffs' challenge is correctly considered mooted by the amended regulation, I agree that the district court's decision should be vacated under *United States v. Munsingwear*, 340 U.S. 36 (1950). *See* Maj. Op. 11–12.